IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                       No. CR 08-2936 JB

FELIPE DIAZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** comes before the Court on the Defendant's Appeal of Order of Detention, filed March 6, 2008 (Doc. 100). The Court held a hearing on March 19, 2009. The primary issue is whether the Court should vacate the Order of Detention that the United States Magistrate Judge entered on February 9, 2009, and should set conditions of release pursuant to 18 U.S.C. § 3142. For the reasons stated on the record at the March 19, 2009 hearing, and for the reasons set forth in this memorandum opinion, the Court will deny the Defendant's Appeal of the Detention Order that the Magistrate Judge issued.

**PROCEDURAL BACKGROUND**

       Defendant Felipe Diaz is charged with violating 21 U.S.C. § 846 by conspiring with various individuals to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. On December 19, 2008, Diaz appeared before the Honorable Alan C. Torgerson, United States Magistrate Judge, for an arraignment and detention hearing. At that hearing, Diaz requested that Judge Torgerson set conditions of release to either the La Pasada Halfway House or to the third-party custody of Diaz' girlfriend, Jamie Duran, on electronic monitoring. Judge Torgerson ordered, however, Diaz to be detained pending review by the United

States Probation Office and accordingly entered an order of detention.

On December 23, 2008, the Probation Office interviewed Duran and made a written recommendation to the Magistrate Court. The Magistrate Court did not, however, respond to the request for release. Because of the lack of response, Diaz, on February 3, 2009, filed a Motion to Modify Order of Detention and to Set Conditions of Release to Halfway House. See Doc. 83. Without a hearing, the Honorable W. Daniel Schneider, another United States Magistrate Judge, denied the Feburary 3, 2009 motion. Diaz therefore submitted this appeal of the order of detention.

## THE LAW REGARDING CONDITIONS OF RELEASE

"Under the Bail Reform Act, a defendant must be released pending trial unless a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Begay, 2009 WL 389715, at * 1 (10th Cir. 2009)(quoting 18 U.S.C. § 3142(e)).Congress has set forth a number of factors that a court must consider in deciding whether appropriate conditions can be fashioned so that a criminal defendant can be released pending criminal proceedings.

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record

concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

"The government must prove risk of flight by a preponderance of the evidence . . ., and it must prove dangerousness to any other person or to the community by clear and convincing evidence. . . ." United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). At the same time, "§ 3142(e) also establishes two rebuttable presumptions favoring detention: one applicable to certain previous violators and one applicable to certain drug-and-firearm offenders." United States v. Villapudua-Quitero, 308 Fed.Appx.272, 272 (2009). 18 U.S.C. § 3142(f) instructs that, in certain cases, a court "shall hold a hearing to determine whether any conditions or combination of conditions set forth in subsection © of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). For example, the attorney for the United States may move for a hearing under 18 U.S.C. § 3142(f) "in a case that involves . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 et seq.) . . . ." 18 U.S.C. § 3142(f)(1)©. Moreover, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the

community if a court finds that "there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . ." 18 U.S.C. § 3142(e)(3)(A).

"Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced." United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991). Moreover, "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." Id. at 1355.

## ANALYSIS

The Court has carefully reviewed the materials before it in this case, including the Pretrial Services Report. Moreover, the Court has held a hearing and heard oral argument regarding whether release would be appropriate. Based its review of all of the relevant information, the Court believes there are no conditions or combination of conditions that will reasonably assure Diaz' appearance and will assure the community's safety. The Magistrate Judges have fairly balanced the various considerations listed in 18 U.S.C. § 3142 and have reached a sound conclusion. The Court therefore believes Diaz should remain in custody.

**I.     DIAZ IS SUBJECT TO A REBUTTABLE PRESUMPTION THAT NO CONDITION OR COMBINATION OF CONDITIONS OF RELEASE WILL ASSURE HIS APPEARANCE AS REQUIRED OR THE COMMUNITY'S SAFETY.**

Diaz is charged under 21 U.S.C. § 846 – conspiring with various individuals to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). If convicted, Diaz faces a statutory ten-year minimum sentence and a maximum of life. Thus, because there is probable cause to believe that

Diaz committed violation of the Controlled Substances Act that carries a potential sentence of more than ten years, 18 U.S.C. § 3142 (e)'s rebuttable presumption applies.

Because of the presumption, Diaz bears a burden of production and must accordingly offer up some evidence that he is not a flight risk or a threat to the community. Although Diaz bears this burden of production, the United States continues to bear the burden of persuasion. See United States v. Stricklin, 932 F.2d at 1354-55. Ultimately, after evaluating the information that both Diaz and the United States have set forth, the Court believes the United States has carried its burden of persuasion that Diaz should be detained. Diaz has discussed some factors that might counsel in favor of release on conditions, including his stable relationship with Duran and the child that they have together. Moreover, Diaz has discussed his employment, which might suggest that he has incentives to remain and to appear, as required. Even so, the Court finds that various factors related to the offense charged, and to Diaz' history and characteristics, counsel against releasing him at this time.

**II.     DIAZ' GIRLFRIEND IS NOT AN APPROPRIATE CUSTODIAN FOR DIAZ.**

Diaz raises two alternative sets of circumstances for release that he asserts will assure his appearance and protect the community. One option Diaz has presented to the Court is that he could be released into the custody of his girlfriend, Duran. She does not appear, however, to be an appropriate custodian. At the time of his arrest, Diaz was residing with Duran. Various guns and drugs were recovered at that residence. Regardless what the facts turn out to be with respect to the drugs and guns, and regardless whether Duran had anything to do with either, the presence of such contraband suggests that Duran's residence is not a suitable environment for Diaz, who is being charged with conspiracy to violate United States drug laws.

### III. A REFERRAL TO THE CUSTODY OF THE LA PASADA HALFWAY HOUSE WILL NOT REASONABLY ASSURE DIAZ' APPEARANCE IN COURT OR PROTECT THE COMMUNITY.

The second option Diaz has raised is that the Court could allow him to be released to the La Pasada Halfway House under a zero-tolerance commission. Diaz argues that, if released to the La Pasada Halfway House, he will not be a threat to the community and he will be able to appear in court. The Court is concerned, however, that, given the nature of the charged offense, and certain aspects of Diaz' history and characteristics, the La Pasada Halfway House is not suitable for him at this time.

The Court notes that Diaz has three previous failures to appear at criminal court proceedings. The Court might be more willing to overlook one previous failure to appear. Given, however, that Diaz is relatively young, and yet has already demonstrated a pattern by failing three times to appear when required, it appears that there a significant risk that, given the seriousness of the charges Diaz is facing, he might again fail to appear if released to the custody of the La Pasada Halfway House.

There is also indication that Diaz has substance abuse problems, perhaps even an addiction. While, on its own, a substance abuse issue might not necessarily lead the Court to deny release, the Court has observed that substance abuse issues make it much more difficult for an individual to succeed under the conditions that Diaz seeks. Congress has also recognized that drug or alcohol abuse are factors that the Court should consider when evaluating whether there are reasonable combinations of conditions for release. See 18 U.S.C. § 3142(g)(3)(A). At least, combined with other factors, the Court believes that Diaz' substance abuse weighs against release to the La Pasada Halfway House.

Diaz also has family members that live in Mexico. There has been some representation that Diaz does not often visit his family members in Mexico. Even so, in light of the serious charges that

Diaz faces, family ties to Mexico increase the incentive that Diaz might have to flee to Mexico rather than face the charges. Moreover, Diaz appears to have given conflicting information to Pretrial Services regarding his travels to Mexico. Concerns about Diaz' ties and travel to Mexico therefore weight against setting conditions for release and in favor of custody.

With regard to Diaz' personal characteristics and history, the Court is also concerned that, for his young age, Diaz has amassed a considerable arrest and conviction history that suggests that he might be a threat to the community's safety. At the time of arrest, numerous guns were found at Diaz' residence. Moreover, Diaz admitted previous gang involvement. The Pretrial Services Report states that Diaz "admitted he is a member of the Surreno's 'B.L.C.' gang in East Los Angeles, California, noting that he 'only banged when he was in LA.'" Attachment A to Pretrial Services Report at 1 (prepared March 18, 2009). Even if Diaz is not, at this time, actively participating in the gang, his past involvement, including the admission that he used to "bang," give the Court caution and suggest that he is a potential threat to the community's safety.

Based on all of these considerations, the Court does not believe that there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. The Court concludes that the most appropriate course of action at this time is to require Diaz to remain in custody. Accordingly, the Court will deny Diaz' appeal of the detention order.

**IT IS ORDERED** that the Defendant's Appeal of Order of Detention is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Reeve L. Swainston
Joel R. Meyers
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

    *Attorneys for the Defendant*