IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                     No. CR 08-2936 JB

FELIPE DIAZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's Second Motion to Modify Order of Detention and to Set Conditions of Release (To be heard by the District Court Judge), filed February 10, 2010 (Doc. 250). The Court held a hearing on March 3, 2010 and March 12, 2010. The primary issue is whether the Court should modify the order of detention and set conditions of release, and release Defendant Felipe Diaz to the third-party custody of the La Pasada Halfway House. Because of F. Diaz' prior failures to appear for court, substance-abuse addiction issues, ties to Mexico, the conflicting information between F. Diaz and his sister as to when he last traveled to Mexico, his admission that he is a former member of a gang, and because there has not been any new information presented, the Court denies the motion. F. Diaz shall remain in custody pending resolution of this matter. The Court continues to believe that there is no condition, or combination of conditions, that will reasonably assure F. Diaz' appearance in Court when summoned and/or safety of the community. For the reasons stated on the record, and for further reasons consistent with those already stated, the Court will deny the motion and will not modify the order of detention.

**PROCEDURAL BACKGROUND**

      The posture of the issue on release has not changed significantly, if at all, since the Court

issued its June 8, 2009 Memorandum Opinion and Order denying F. Diaz' Appeal of the Detention Order that the Magistrate Judge issued.  See Memorandum Opinion and Order, filed June 8, 2009 (Doc. 143)("June 8 MOO").  F. Diaz is charged with violating 21 U.S.C. § 846 by conspiring with various individuals to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.  F. Diaz previously moved the Magistrate Court to set Conditions of Release to the third-party custody of Jamie Duran or the La Pasada Halfway House.  See Defendant Felipe Diaz' Motion to Modify Order of Detention and to Set Conditions of Release to Halfway House, filed February 3, 2009 (Doc. 83).  The Magistrate Judge denied the request, see Order Denying Motion, filed February 9, 2009 (Doc. 87), and Diaz sought an appeal with this Court,  see Appeal of Order of Detention, filed March 6, 2009 (Doc. 100).  The Court denied his appeal, finding that the United States met its burden of persuasion that F. Diaz is a potential flight risk and a danger to the community.  The Court noted F. Diaz' three previous failures to appear at criminal court proceedings and F. Diaz' substance abuse problems.  See June 8 MOO at 6.  The Court expressed concern about F. Diaz' family ties to Mexico.  See id. at 6-7.  The Court also expressed concern about F. Diaz' criminal history, the numerous firearms found in his residence, and his previous gang involvement in Los Angeles.  See id. at 7.  The Court issued an addition Memorandum Opinion and Order on June 16, 2009, denying in part a furlough request for F. Diaz to see his newborn son for the same reasons the Court expressed in the June 8 opinion.  See Memorandum Opinion and Order, filed June 18, 2009 (Doc. 152).  On December 17, 2009, the Court granted an unopposed request for an emergency furlough for F. Diaz to attend his father's funeral.  See Unopposed Order Granting Emergency Furlough, filed December 17, 2009 (Doc. 233).

Diaz now renews his request that the Court modify its Order of Detention and release F. Diaz to the La Pasada Halfway House.  See Motion at 1.  F. Diaz argues that one of the factors the Court

must consider, under 18 U.S.C. § 3142(g) is the weight of the evidence against F. Diaz. F. Diaz contends that the 18,000 pages of discovery the United States has produced shows no wiretap information referencing "Felipe Diaz" in connection with any narcotics transactions. According to F. Diaz, the wiretap information contains several references to a "Felipe/Lipe," which F. Diaz contends refers to an individual who resides in Mexico. Motion at 3-4. F. Diaz also contends that the wiretap discussions are between someone identified as "Esteban" and not "Felipe." Esteban Diaz is F. Diaz' brother. See Motion at 5. F. Diaz contends that the evidence linking him to any narcotics crime is circumspect and should weigh in favor of modifying his detention conditions. See Motion at 5.

F. Diaz also argues that he complied with his eight-hour furlough to attend his father's funeral and thus has proven he is not a flight risk. See Motion at 6. He also argues that he has strong family ties in New Mexico. See Motion at 6. F. Finally, Diaz contends that any substance-abuse problem he may have had at the time of his arrest fourteen months ago is now gone, and asserts that La Pasada has a zero-tolerance policy for use of narcotics or alcohol. See Motion at 7.

The United States opposes F. Diaz' request, as does United States Probation Officer Sandra Day. See Motion at 7. The United States argues that F. Diaz remains a flight risk and a danger to the community based solely upon the charges against him. See United States' Response to Defendant's Motion to Modify Conditions of Release, filed February 12, 2010 (Doc. 251) (citing 18 U.S.C. § 3142(e)). The United States contends that F. Diaz' behavior during his emergency furlough for his father's funeral is neither representative of his lack of flight risk nor is it indicative of his lack of danger to the community. See Response at 3.

At the first hearing on March 3, 2010, Kimberly Middlebrooks, F. Diaz' attorney, argued that

the motion was renewed based upon her review of the discovery and her skepticism that the weight of the evidence favors F. Diaz' detention.  See Transcript of Hearing at 2:13-24 (taken March 3, 2010)("Mar. 3 Tr.")(Middlebrooks).[1]  Ms. Middlebrooks also argued that, although F. Diaz joined a gang in Los Angeles when he was twelve years old, he moved out to Albuquerque two or three years later to escape from the gang activity.  See Mar. 3 Tr. at 7:1-8 (Middlebrooks).  Ms. Middlebrooks further stressed that there is no indication from the wiretaps that F. Diaz is involved in violence or condones violence.  See Mar. 3 Tr. at 7:23-8:1 (Middlebrooks).  She also argued that F. Diaz' past failures to appear date back to when he is a juvenile and thus have minimal probative value regarding his risk of flight.  See Mar. 3 Tr. at 8:23-9:3 (Middlebrooks).

At the first hearing, Assistant United States Attorney Jon Stanford stood in for Assistant United States Attorney Joel Meyers, who was in trial in another case, and argued that the United States knows of no evidence which would serve to rebut the presumption under § 3142(e), but was not able to explain the evidence which the United States contends it has against F. Diaz.  See Mar. 3 Tr. at 11:5-7 (Middlebrooks).  Mr. Stanford argued, having listened to Ms. Middlebrooks' argument, that this case could be a situation in which aliases were used, and explained that many times in narcotics-trafficking cases a last name with multiple first names are used to avoid detection.  See Mar. 3 Tr. at 11:11-23 (Stanford).  Mr. Stanford also stressed that the Probation Office still recommends detention.  See Mar. 3 Tr. at 12:2-3 (Stanford).  Mr. Stanford further argued that the United States did not oppose the eight-hour furlough for F. Diaz' father's funeral out of compassion and sympathy, and that there were extenuating, tragic circumstances at play, but the United States does not believe his compliance with the furlough mitigates his flight

---

[1] The Court's citations to transcripts of hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

risk.  See Mar. 3 Tr. at 12:7-17 (Stanford).

The Court resumed the hearing on March 12, 2010, so that Mr. Meyers could attend.  At the hearing, Mr. Meyers argued that the investigators in this case have assured him that the person in the wiretaps is F. Diaz, and to the extent that the wiretap discovery does not convey that fact, the United States will have to argue its theory before a jury and adequately explain the discrepancies between the names reflected in the wiretaps and whom the United States contends is speaking. See Transcript of Hearing at 3:6-11 (taken March 12, 2010)("Mar. 12 Tr.")(Meyers).  He stated that the investigating agents have identified eleven wiretapped telephone calls between July 24, 2008 and December 8, 2008 which involved F. Diaz and co-defendant Javier Aispuro.  See Mar. 12 Tr. at 3:25-4:5 (Meyers).  Mr. Meyers also argued that the United States has corroborating evidence from informants that supports its theory that F. Diaz is the correct person.  See Mar. 12 Tr. at 3:15-24 (Meyers).  Mr. Meyers further argued that the investigating agents had conducted surveillance on F. Diaz before his arrest, but that they thought that his name was Esteban Diaz, which is why Mr. Meyers believes that the wiretaps reflect the name "Esteban" instead of "Felipe." Mar. 12 Tr. at 6:3-18 (Meyers).  Ms. Middlebrooks responded that the only surveillance of F. Diaz of which she is aware took place on December 10, 2008 -- the date when officers conducted a traffic stop and asked F. Diaz for his cellular telephone number.  See Mar. 12 Tr. at 12:25-13:11 (Middlebrooks).  Ms. Middlebrooks also argues that the affidavits for the wiretaps mention Esteban and not Felipe.  See Mar. 12 Tr. at 13:14-14:7 (Middlebrooks).

## ANALYSIS

F. Diaz asks the Court to modify its order of detention, to set conditions of release pursuant to 18 U.S.C. § 3142, and to release him into the third-party custody of the La Pasada Halfway House.  The Court has reviewed F. Diaz' motion and considered the information that the parties

presented at the hearing, and based on its review of the facts, the Court does not believe that there is sufficient new information to warrant a modification of its order of detention. The Court recognizes that one of the factors which may be considered under 18 U.S.C. § 3142(g) is the weight of the evidence against F. Diaz, and the Court is concerned that the United States may be facing significant difficulties in explaining the identity discrepancies in its wiretap evidence. The Court, however, is comforted by the United States' representation that it has corroborating evidence to support its theory that Esteban Diaz is the Felipe Diaz currently in custody.

The Court believes that the information presented does not significantly change the posture of the issue of release from when the Court addressed it in its June 8, 2009 Memorandum Opinion and Order. The Court continues to believe that there is no condition, or combination of conditions, that will reasonably assure F. Diaz' appearance, and will assure the community's safety. The Court remains troubled by F. Diaz' past failures to appear, and although the Court recognizes that F. Diaz complied with his eight-hour furlough for his father's funeral, the Court does not believe that his compliance in a time of tragedy provides a guarantee that F. Diaz will appear if released to the custody of the La Pasada Halfway House. The Court also remains concerned about F. Diaz' past substance abuse problem, and although his time in custody may have helped his substance abuse, the Court believes it is premature to release F. Diaz based upon improvement in that area. F. Diaz' ties to Mexico and his history of gang activity also continue to weigh against modifying the Court's order of detention. In the end, the Court does not believe that there has been any new evidence that has been presented that would cause the Court to change its conclusions that F. Diaz presents a risk of not appearing and, because of the nature of the criminal charges against him, that F. Diaz presents a danger to the community. The Court, therefore, will deny the motion and continue to detain F. Diaz.

**IT IS ORDERED** that the Defendant's Second Motion to Modify Order of Detention and to Set Conditions of Release (To be heard by the District Court Judge) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Joel R. Meyers
Jon Stanford
Cynthia L. Weisman
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

    *Attorney for the Defendant*